May I please the court? The question before this reviewing tribunal is whether this court, I'm sorry, whether the government is going to be allowed to deprive an outstanding employee of 20 years service, a computer who is with the Naval Criminal Investigative Services, of her right to justice, of her well-earned retirement pay and benefits. Will the government be allowed to inflict such a draconian result after this court has held in Hall 2 that she was unlawfully denied court leave status and pay while serving as foreman of a California grand jury after any basis for her removal had been invalidated. On the first appeal, this court decided in Hall 1 that the claims court erred in denying jurisdiction under the Tucker Act and so this court said no, we will not allow the government to deny Hall her right to seek justice. I'm sorry, the court said two different things and that difference seems extremely important. The court said for pre-removal period, the Court of Federal Claims had jurisdiction. It just as clearly said for the removal itself, the Court of Federal Claims did not have jurisdiction and that the only remedy was one in the MSPB. This was in August of 2010 and at that point, you knew that the only way to challenge the removal was to go to the MSPB and it took 21 months. Until May of 2012. It was made clear, Your Honor, including in Hall 2 that to go further beyond her triumph as this court ruled in Hall 2 that she was entitled to court leave, pay, and status that then post-removal would go to the board and we understood that. That's why we petitioned. Well, after we got the Hall 2 ruling, within 24 days, we refiled. The trouble is that that part of it was clear in Hall 1. It's explicit in Hall 1 in the August 2010 decision that the MSPB was the only forum for challenging the removal. I understand, Your Honor, but then if they didn't handle it properly, which was the case here, that's why we're here today, then we have to go to the Federal Circuit and this is our third time here now to achieve, hopefully, the proper final result. You said they didn't handle it properly. You mean they, the MSPB, didn't handle it properly? I'm talking about the administrative judge and MSPB. But what they held was it was untimely filed. How did they err in concluding that it wasn't timely filed? Well, there are a number of factors there, Your Honor. We feel that they didn't look to see that there was good cause. And we have outlined for you in our opening brief eight points of extraordinary circumstances that support good cause, plus Head Note 12, and then in the reply brief, three additional points. The case is just overflowing with good cause for a waiver of any strict time requirement. Is there a distinction between the claims for pre-removal back pay and the claims for reinstatement and post-removal back pay that we said in Hall 1 had to go to the Board? I'm not sure I understand that question, Your Honor. A distinction between criteria on pre-removal? No, a distinction between your argument with respect to whether or not you were timely. Because in Hall 1, we said there's a whole category of things that the Court of Federal Claims has no jurisdiction over, versus the other category that we said they did have jurisdiction over. Well, the Board clearly had jurisdiction post-removal, and that's why we went to the Board after we got the Hall 2 decision. But when we filed there, then they said, well, it's taken too long, and so it's not timely. You're refiling, and dismiss the action. Well, but I guess I don't understand why that was erroneous. They told Ms. Hall that she had to refile within 30 days after receipt of a final OPM decision, but in no event later than December 2, 2005, and she filed six and a half years later. I don't understand why it isn't untimely. Well, there are a number of reasons that go behind that, Your Honor. She was led to believe when she was told that she had to file by December 2, 2005, that that was discretionary. You may refile. It didn't say, as it does in the Nelson case, you must refile. And that was exacerbated by counsel's letter from the agency of, I think, November 3, that it was telling Mr. Hendler at OPM, we're sending you our files now after nine months of delay. And the judge, I've got that letter right here so that I can get this out to you. I definitely want to hear about the letter, but the OPM dismissal says, but in no event later than December 2, 2005. That's true. So it doesn't say May, like you suggested a minute ago. The word May doesn't actually appear in that language at all. No, that order says May, Your Honor. People at May file her appeal within 30 days after receipt of OPM, but in no event later than December 2, 2005. That's true. That's uncontroverted. But the judge didn't turn around and say, incidentally, if we don't have the OPM decision in time, then you should come back and ask for permission for another continuance or another dismissal without prejudice. And that's unfortunate because this pro se client, Mrs. Hall, was led to believe that if she was going to refile, she was not advised that she had the right to appeal an adverse decision from OPM. The whole purpose of that, putting it over until December 2, was so they could get a decision from OPM on her right to court-legal entitlement. That was the whole heart of this case. And OPM, well, she writes to OPM on November 3rd, and she says in the second paragraph, and this is in the joint appendix, I think it's 171, as you know, she asked that the administrative judge hold appeal and abeyance pending the decision of OPM on her claim. The judge then on me entered an order allowing Mrs. Hall to take a dismissal to leave and to refile her MSPB appeal after OPM enters its decision. Now, that's misleading. But she didn't do that. I mean, she didn't file by December. She didn't file by February, whatever, 30 days after the OPM mid-January decision. Instead, she did nothing with respect to the MSPB until going through two rounds of litigation in the Court of Federal Claims, not until 21 months after this court definitively said in Hall 1 that the MSPB is the only forum that can grant relief with respect to the removal. But OPM is the organization, the agency, that made the decision on court leave, on pay issues. That is the law. Right, so if in January OPM had said, you know, you're right about this, there would have been no need, presumably they would have given them the money, and then she would have gone back to the MSPB and litigated about the removal. But there was nothing in the September order that said you have to wait until a favorable, ultimate determination on the underlying issue to come back here. No, that's correct, Your Honor. But it did say that OPM decision was the basis for putting this over, and OPM was the deciding body. And it did not say, however, incidentally, if you don't agree with the OPM decision, and the fact that he had already told her, I'm going to follow what the agency's position is on this, unless there's some other controlling authority. Well, I guess what I don't understand is maybe you've convinced me now that there is a basis for confusion about whether she had to file by December 2, 2005, or within 30 days after the ultimate OPM decision, even if it was after that date. But the problem is she didn't file within 30 days after the OPM decision. Wow. So I don't understand where the good cause exists for... I understand your point of confusion, and I am sympathetic to it, but then she didn't follow that rule either. But she couldn't refile with the board with an adverse OPM decision because that was going to ensure that she would lose. It was unfavorable. No, but I don't understand. I'm sorry, but that's just not the case. For one thing, MSPB would make its own decisions with whatever appropriate deference there is to OPM. Yes, OPM. But more importantly, in that process, which may have taken... I don't know what the ordinary MSPB process is. I think they have kind of a handbook rule of thumb, try to do this in 120 days or something. But within the space of a short period of time, that would have come to this court, and then this court in, say, 2007 instead of 2012 would have determined the proper interpretation of 6322, and the government's liability for any potential post-removal damages would have been capped. Instead, they've got six years of liability. But that was because of the time it took in connection to the litigation process to correct OPM's erroneous decision. Right, but I guess my point or question is that time would have been shortened by maybe five years, wouldn't it, if she had filed before MSPB because the MSPB appeal would have come here. A long time before Hall 2. To me, that's speculation, Your Honor. I mean, that's a possibility, but the fact is that OPM told her in its erroneous decision in January of 2006 that, incidentally, this is our final decision, and if you want to take it any further, you have to go to an appropriate United States federal court. And that's what she did. That's in the OPM decision in the joint appendix. Would you like to save your remaining time for rebuttal at this point? You're into your rebuttal time. Would you like to save the rest? Yes, I would, Your Honor. Let's hear from the government. Mr. Erdin. Thank you, Judge Moore. May I please record? Please excuse my voice. I'm sorry. I want to first answer the question you had about the OPM decision, and that decision is that JA 136, the OPM decision never told the appellant that she didn't have the right to go to the board. The OPM decision only said that no further administrative review is available within OPM. It said nothing about the jurisdiction of the board. Secondly, I want to bring this back to the fact that the only issue before the court today is whether or not Ms. Holmes met her burden, showed good cause for a failure to refile her decision. The underlying merits of this is not before this court. And also the court has said that the court is not inextricably intertwined with the discharge, what Ms. Holmes filed with the board was an appeal of her discharge. When she filed an appeal with the discharge, of her discharge, the administrative judge said you may come back 30 days after you receive a decision from OPM or no later than December 2nd. The may come back, counsel make much to do about must and may. Any reasonable person would have understood but in no event later than to mean that you have to come back. And the 30 days after the OPM decision may come back because it could have been that the OPM decision, she may have been satisfied with it and found no need to come back to the board. I do have a problem with the December date because you may come back after the OPM decision but you have to come back even if you don't get an OPM decision. What was she coming back with or for? She would come back to the board really to say I don't have an OPM decision. The administrative judge would have issued another, I believe, I can't speak necessarily, but the procedures are if for an example nothing had happened in the OPM decision, the administrative judge would have issued another dismissal without prejudice to come back. In any event... But the administrative judge also could have just left the case open while she went to OPM, right? This was just an administrative closing for his convenience of his statistics. And so then he creates this sort of false deadline. I don't necessarily think it's just administrative closure for the statistics because in many cases, I don't have the statistical data on this, but in some cases when you dismiss without prejudice the appellants don't come back and so if you leave it open, you put the burden on the appellant, it's on the appellant to determine whether or not they will come back to the board or not. You see these in more criminal matters where there is an ancillary criminal matter involved and the appellant comes to the board to say I have a criminal matter. I don't want to go forward with this until there's a resolution of this. And so if the criminal... And they say no later than a certain date. If by that certain date, the criminal matter has not been resolved, then that appellant comes back to the board, tells the administrative judge that criminal matter has not been resolved and the administrative judge would give a new date, which incidentally, a reasonable date, which the administrative judge and the parties believe is an appropriate date that the other matter would be resolved. Ms. Hall did not appeal. She did not object. As a matter of fact, she asked. She did not appeal to the board. The administrative judge's dismissal without prejudice. And if she was confused, it was her responsibility to come back to the administrative judge or to the board to ask for clarification. She did not do that. If she believes also that she may or could have come back 30 days after OPM issued its decision, she didn't come back within the 30 days either. Well, the OPM... You say that OPM doesn't tell them they can't go to the board, but it does... I mean, he's right, that it does specifically say there's no further administrative activity that's appropriate and it says there's nothing in this order that prevents you going to a court. But it said at the OPM. Did not make any determination as to whether or not there was administrative appeal to the board. The OPM did not say anything about the board's jurisdiction because it had no responsibility, not no jurisdiction to do so. It merely told Mrs. Hall that that was the final administrative review at OPM and specifically say at OPM. And here again, Mrs. Hall, if she was confused at any of these stages, she could have come back to the administrative judge or to the board. Mrs. Hall said, I'm waiting because I'm looking for an attorney. Mrs. Hall got counsel in 2008 and still waited more than three years before they came back to the board. So there were several opportunities at which Mrs. Hall could have refiled her appeal of her discharge to the board and she refused to do so. Not only did she refuse to do so, she did not come back to the board to seek any clarification at all on this. She had counsel. But no later than. And if she thought, well, no later than meant something else, she could have come back to the board. Mrs. Hall is someone who was the foreperson of a jury, so she was not a pro se individual who could not maneuver and ask questions if she was confused. But it's a bit of a morass here. So you go to the ALJ. The ALJ says, no, no, no, you've got to get a decision from OPM. You go to OPM and OPM at least issues an order that appears that her next step is to go to court, which she does. But had Mrs. Hall come back to the board, nobody, the administrative judge, OPM, or anybody else, no one ever said that the board did not have jurisdiction over Mrs. Hall's discharge or really over the issue of her court leave. And so had she come back to the board at any of these times that she could have, she could have avoided maybe having to come to court because she did not know how the board would rule on the discharge issue. Had she come back to the board, the board would have issued a decision on the discharge issue. And if she was satisfied with it, that would, of course, have been the end of it. But if she was not satisfied with it, she could have come to the board, Mrs. Hall could have come to the board four or five years before she actually came to the board, and it probably would have saved this court some time in adjudicating, at least on the discharge issue, had she followed the directions that the administrative judge gave her. But she refused, and in one of her pleadings she said because she thought it was futile. Well, the board, this court and the law gives the board, the standard of review is whether the board's decision was arbitrary and capricious. The board is given wide latitude to manage its cases, and it is not for an appellant to come back to the board whenever that appellant sees fit to do so. Six and a half years later. She was bounced around a lot. I'm sorry? She was bounced around a lot in a lot of different proceedings all over basically the same general issues. And when we issued our last decision, we said, okay, this half of it is properly before the CFC. Well, the first half is absolutely not before the CFC. It has to be at the board. Do you think if she had come then, promptly thereafter our last decision, that maybe there would be a different good cause case here? You mean at the Hall 1? Are you referring to Hall 1? Yes, I'm talking about when we made it clear that the only place which she could pursue her removal action was in the board, that jurisdiction didn't exist in the CFC for that. If she had timely, immediately filed in the board, would this be a different case or not? I believe it would have, Judge Moore, because I believe she could have made a better case for her claim that she was confused. Because here, even though she had been told by the administrative judge to come back by December 2nd, and she said, okay, I'm confused. I thought I had to wait for the OPM decision. I thought I had to wait for the court. But here this court said, come back. And at that time, she had counsel. So the fact that she was a pro se appellant, that issue went out the window. She was represented by counsel. So at least as of the date we issued our decision, if there was unclarity in all the events preceding that, at least as of the date we issued our decision, which indicated the only path for the removal claim was in the board, you think that at that point she still acted untimely in refiling with the board? Absolutely. And I'm not conceding that she didn't act untimely by not coming back December 2nd. But if you use that as a given, that she was confused all these other times, at least she had clear direction from this court that that was the only avenue she had to come back. Now, she said, oh, she would have won. This court didn't address the issue. It addressed the AWOL issues, but the issues on which she was discharged and her reaction to the discharge remained for the board to adjudicate on the merits of her discharge. But she did not come back to give the board that opportunity. She didn't give the board the opportunity. And I don't think she should be allowed to come back whenever she chooses to do so, just to come back to have the board to adjudicate. Because she had a trial strategy to go elsewhere and then decide, OK, now my trial strategy, I've gone these other places, and now it's time to come back to the board. I just don't believe that her timing is such that she showed good cause, even though she was pro se. At some point in there, even if you give her she's pro se up to a point, at some point, at least in 2008, she was represented by counsel. She waited three and a half years before she came to the board, after she was represented by counsel. Even if you give her that, when the board issued its decision in Hall 1, this court told her the only avenue she had was to the board. She still refused to come back to the board from that. So I think she had many opportunities to file, if not a timely appeal according to the December 2 deadline, she had the opportunity to at least make a better case that her appeal was based on her understanding, and she failed to do so. So we believe that this court, this board's decision should be affirmed because we believe that there's wide deference given to an administrative agency to control its own docket, and that appellants should not be allowed to just come back after they have gone through various areas of trial strategy to come back whenever they choose to do so and file an appeal with the board. Do you have a question? No, no, no. I don't think so. One of the other issues that Pella raised in this issue was that she was told by OPM, and I think this more appropriately answers your question, Judge Moore, maybe in Judge O'Malley's question, that OPM said there was no other administrative review in OPM. Well, OPM, I think I may have said this, OPM did not say there was no further review with the board. OPM just said with OPM, and so I don't think she can use that as an excuse not to come back to the board. She also claimed in some of her filings that the administrative judge said, oh, I don't have jurisdiction. The administrative judge refuted that in his decision that he issued in 2012 that he never said he didn't have jurisdiction. And of course, the board has jurisdiction to review and never claim in the writing that it did not have jurisdiction to adjudicate the issue of the court leadership. Can I ask a kind of background question, I guess? Back in September of 2005, when the parties agreed and the administrative judge agreed it would be a good idea to give OPM a first crack at at least a core, if not a decisive legal issue, you're not suggesting that that was actually necessary because OPM is at best an agency interpreter of the statute, given deference under Chevron, presumably, but evidently not determinatively, as this court said in Hall 2. And in any event, OPM couldn't decide the discharge question in terms of interpreting the statute. So that was a useful thing to do, but not a necessary or case-deciding thing to do. Absolutely not a case-deciding issue. And of course, in this instance, this is just merely an opinion of OPM, not derived from some hearing. It wouldn't have been given a Chevron deference anyway. So when they came right back to the board, that was just a courtesy since she had filed with OPM. And as I said earlier, if OPM had issued a decision that she agreed with, she probably would have left it there and not come back to the board at all. That's why the administrative use of the word may come back 30 days after, as opposed to you shall, but in no event later than December 2, 2005. No, that was not a necessary prerequisite to the board's jurisdiction, not at all. As I said earlier, the standard review for the board is whether or not the board's decision was arbitrary and capricious, whether or not the board abused its discretion. We believe that the board did not abuse its discretion, that the board was very lenient, in fact, with the appellant by giving her this opportunity to get a decision or an opinion from OPM and said to her specifically and to the extent that Ms. Hall is claiming that, well, the OPM decision, the judge did not say, but if you don't, you will be dismissed. There's no distinction between in no event later and you must, and we believe that the board's decision should be affirmed. Thank you so much. Thank you, Ms. Verden.  Sorry about the voice. It's okay. Thank you, Your Honor. We understood after all one that the board had jurisdiction over the removal, but not over court leave, that particular issue. And that's why it was particularly helpful when the administrative judge dismissed without prejudice so that an OPM decision could be obtained. It was recognized that was going to be dispositive. That was the beating heart of the whole case and it's why we're here today. And the agency, by its misconstruction and distortions of the court leave law, caused the delays that followed from that. And it's an ancient maxim, of course, that one should not profit or benefit from his own wrong. Here the agency had misconstrued the statute and then that got us into this procedural trap that has brought us here finally today. They have admitted in their brief that there was no jurisdiction over court leave with the board. Now, the judge, incidentally, never warned her back in 05 of the consequences of not returning to him that you would lose your appeal rights. That was missing. And the OPM decision, incidentally, never makes any reference whatsoever to MSPB. It just says, your next stop is federal court. And that's what she did after she got counsel. The length of delay is really not an issue here because the government has not provided you with any evidence of prejudice and they have not been prejudiced in any way whatsoever by the delay here. That's highly significant. They have even discussed it in their brief and the Hoover case shows and it's somewhat parallel to ours that they had no evidence whatsoever. We're out of time. Do you have a final thought? Yes, thank you, Your Honor. You know, for 10 years now, and we've laid most everything out, I believe, in our briefs, that her salvation in this whole trek, this marathon quest has been this oral. And we're asking you to look carefully at this in terms of reigniting the sacred flame of justice and to order the board to reinstate her to the new, to the NCIF position which she excelled so that she could qualify for her retirement of 20 years which she richly deserved and she won't be stripped of that and to order her back pay. The Erickson case came down December 31st of 2013 and the postal clerk there was ordered by the board after a couple of appeals and then on remand to reinstate this man who was in military service and absent from the postal clerk duties for some years. He was reinstated and 14 years of back pay awarded and that case just came down. So time is not an issue and particularly where there's been no prejudice whatsoever to the agency they caused this whole dilemma. So I'd like to conclude with this thought. I think that it's important for this court to send out a message to federal employees that management cannot fire them for fulfilling one of the highest duties of an American and that's jury service. It's not a paid vacation. Let the nation know that if a federal employee is removed for serving on a jury that employee will be made whole and this is a very, very important message to be sent out and you have abundant bases of good cause to overturn their timeliness concerns. They really don't come to play in this case on the merits and the evidence that was available. Thank you very much for the privilege of addressing this honorable court. We thank both counsel. The case is taken under submission.